# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PAREXEL INTERNATIONAL (IRL)    )
LIMITED,    )
      Plaintiff,    )
     )
     )
v.      )    **C.A. No. N19C-07-103**
     )          **PRW CCLD**
XYNOMIC PHARMACEUTICALS, INC.,    )
     )
      Defendant.    )

Submitted: June 3, 2020
Decided: September 1, 2020
Opinion and Order Reissued: September 4, 2020[*]

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiff's Motion for Partial Summary Judgment,*
**DENIED in PART and GRANTED in PART**.

A. Thompson Bayliss, Esquire, April M. Kirby, Esquire, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Kurt S. Kusiak, Esquire, FITCH LAW PARTNERS LLP, Boston, Massachusetts, *Attorneys for Plaintiff Parexel International (IRL) Limited.*

Lisa Zwally Brown, Esquire, Samuel L. Moultrie, Esquire, GREENBERG TRAURIG, LLP, Wilmington, Delaware, *Attorneys for Defendant Xynomic Pharmaceuticals, Inc.*

**WALLACE, J.**

---

[*] Due to a circumstance internal to the Court, this memorandum opinion and order was placed on its public website on September 1, 2020, but not actually docketed. The Court has reissued and docketed its memorandum opinion and order this date to ensure that any Courts' rules deadlines begin to accrue on September 4, 2020. There is no other change to that issued on September 1, 2020. And the Court apologizes to the parties for any inconvenience this oversight has created.

This is a breach-of-contract action through which Plaintiff Parexel International (IRL) Limited seeks declaratory relief and damages against Defendant Xynomic Pharmaceuticals, Inc. Parexel and Xynomic had entered into a Master Services Agreement (the "MSA") in April 2018. The parties thereafter signed work orders under the MSA for research services related to Pazopanib, a chemotherapy drug. Parexel now says that Xynomic breached the MSA and two work orders by failing to pay Parexel for service fees specified in those work orders.

Parexel filed its Motion for Partial Summary Judgment ("Parexel's Motion") first. Xynomic countered with its own Cross-Motion for Summary Judgment ("Xynomic's Motion"), arguing that this Court lacked subject matter jurisdiction because Parexel allegedly failed to abide by the mediation provision of the MSA.

The Court heard argument on both motions. At argument, the Court suggested the parties confer regarding potential submission of their dispute to expedited, non-binding mediation consistent with the MSA's mediation provision.[2] The parties agreed to engage in expedited mediation and the Court stayed decision on their cross-motions.[3] Within a month, the parties' joint post-mediation status report advised the Court that the parties were unable to reach a resolution. The Court

---

[2] D.I. 36.

[3] D.I. 37.

then denied Xynomic's subject-matter challenge as moot and deemed Parexel's Motion fully submitted for decision.[4] Having considered the record and the parties' arguments, this Court **DENIES** Parexel's Motion as to Count I and **GRANTS** Parexel's Motion as to Count II.

## I. FACTUAL BACKGROUND

Parexel provides a wide range of contract research organization services for clinical research and drug development.[5] Xynomic is a pharmaceutical company that develops, manufactures, and markets biopharmaceutical oncology products.[6]

In April 2018, Parexel and Xynomic entered into the MSA.[7] The MSA provides that Xynomic, from time to time, may engage Parexel to provide certain services set forth in work orders executed by both parties.[8] And the specific services Parexel was to provide for Xynomic would be outlined in each given work order.[9]

---

[4] *See* D.I. 39, 40.

[5] Am. Compl. ¶ 1; Plf.'s Op. Br. in Supp. of Its Mot. for Partial Summ. J. ("Plf.'s Mot."), Ex. A ("MSA") at 1.

[6] Answer of Xynomic Pharmaceuticals, Inc. to Am. Compl. ("Ans.") ¶ 2.

[7] Ans. ¶ 6.

[8] Am. Compl. ¶ 7; MSA § 2.1.

[9] MSA at 1.

## A. RELEVANT PROVISIONS OF THE MSA

Section 2 of the MSA is entitled "Services."[10] In Section 2.1 of the MSA, Parexel agreed to provide services to Xynomic as set forth in work orders executed by both parties.[11]

Section 2.2 of the MSA provides, in relevant part:

[Xynomic] and PAREXEL agree that any change to the details of a Work Order or the assumptions upon which such Work Order is based may require changes to the description of Services, budget, estimated timelines, or payment schedule. Any such required changes shall be reflected in either (i) an approved entry in a Change in Scope Log ("CIS Log"), in accordance with and in the form set forth in Attachment B, or (ii) a written amendment to the Work Order (a "Change Order"), in accordance with an in the form set forth in Attachment C. The parties to the Work Order agree to process such changes as follows:

(a)     For each Work Order related to clinical research services only, Parexel shall generate and maintain a CIS Log showing all changes to the scope of Services and any associated changes to the budget. After each new entry, PAREXEL shall forward the updated CIS Log to [Xynomic] and [Xynomic] shall review the CIS Log and request any changes in writing within ten (10) business day of receipt of the CIS Log. A [Xynomic] employee duly authorized to approve new entries in the CIS Log shall promptly (but not later than fifteen (15) business days after receipt) sign each applicable line item approved by the [Xynomic]. Upon approval by [Xynomic] the amended scope of Services and any associated changes to the budget will be binding on both parties and shall be implemented. Once the aggregated amount of the CIS Log reaches a threshold that will be specified in the applicable Work Order, or if regulatory reasons demand it, then a formal Change Order will be prepared, and signed by both parties. A Change Order

---

[10]   *Id.* § 2.

[11]   Am. Compl. ¶ 8; MSA § 2.1.

will be prepared irrespective of the threshold at the end of every six calendar months or as otherwise agreed upon in respective Work Order, as well as the completion of Services.

(b) For all other Work Orders, the parties to the Work Order will negotiate and execute a Change Order reflecting agree-upon changes and any related terms.[12]

Section 4 of the MSA is entitled "Payments."[13] Under Section 4.1 of the MSA, Xynomic agreed to pay Parexel "Service fees specified in the applicable Work Order[s]" and "any other payments made by PAREXEL or its Affiliates to third parties in connection with the Services ("Pass-Through Expenses")," as reflected in invoices Parexel sent to Xynomic.[14]

Section 4.2 of the MSA further provides that:

All invoiced amounts for Services performed in accordance with the terms and conditions of this Agreement and any Work Order are due net thirty (30) days from the receipt of PAREXEL's electronic invoice. If [Xynomic] identifies items in an invoice which are disputed, [Xynomic] will notify PAREXEL in writing, noting its objection to the disputed item(s) with specificity, within ten (10) working days of the date of the invoice. All items that are not disputed by [Xynomic] in writing within such period shall be deemed to have been approved by [Xynomic]. All disputes of which [Xynomic] notifies PAREXEL in accordance with this Section shall be addressed as set forth in Section 18 below. [Xynomic] will pay any undisputed portions of any invoice per the agreed upon payment terms. [Xynomic] will pay interest on any unpaid invoice (including any undisputed portion of a disputed invoice) at the rate of one percent (1%) per month until such invoice(s) is paid

---

[12]  MSA § 2.2.

[13]  *Id.* § 4.

[14]  *Id.* § 4.1 (emphasis removed).

in full. Payments will be made to PAREXEL in accordance with the instructions set forth in the applicable Work Order or such other written instructions as may be provided by PAREXEL from time to time.[15]

Section 18 of the MSA is entitled "Dispute Resolution."[16] Section 18.1 provides, in pertinent part:

> If a dispute arises between the parties relating to this Agreement or any Work Order, the parties to this Agreement or such Work Order will meet and attempt to resolve the dispute in good faith. In the event the dispute is not resolved through negotiation within ten (10) business days after said meeting, the parties will submit to confidential, non-binding mediation before a mutually acceptable mediator. Each party will designate at least one corporate officer with full authority to resolve the dispute who will attend and participate in the mediation. If the dispute remains unresolved after mediation, then each party will be free to pursue any available remedy at law or in equity.[17]

## B. THE WORK ORDERS

The parties signed work orders under the MSA for services related to Pazopanib, a chemotherapy drug.[18] There are two work orders at issue in this action.[19] The parties executed the first work order, with an effective date of September 3, 2018, in connection with Project No. 240681 (the "First Work Order")

---

[15] *Id.* § 4.2.

[16] *Id.* § 18.

[17] *Id.* §18.1.

[18] Am. Compl. ¶ 6.

[19] Ans. ¶¶ 13, 71.

for services related to a clinical research study of Pazopanib.[20] From October 31, 2018, to June 2, 2019, Parexel sent Xynomic twenty-seven invoices for services rendered and Pass-Through Expenses incurred and expected under the First Work Order. Those remain unpaid, and twenty-five of them are the subject of Parexel's summary judgment motion (the "First Work Order Invoices").[21] Xynomic did not object to any of the amounts reflected in any of the First Work Order Invoices within ten days of the invoice being sent.[22] Xynomic has not paid $5,530,579.30 of the "undisputed" amounts reflected in the First Work Order Invoices.

The parties executed the second work order, with an effective date of July 26, 2018, in connection with Project No. 241812 (the "Second Work Order" and together with the First Work Order, the "Work Orders") for regulatory consulting services.[23] From December 23, 2018, to June 17, 2019, Parexel sent Xynomic nine invoices for services rendered and Pass-Through Expenses incurred and expected pursuant to the Second Work Order. All nine of those remain unpaid, and seven of them are the subject of Parexel's summary judgment motion (the "Second Work

---

[20]   *Id.* ¶ 13.

[21]   *Id.* ¶¶ 18–52.

[22]   *Id.* ¶¶ 18–68.

[23]   *Id.* ¶ 71.

Order Invoices").[24] Again, Xynomic contested none of the amounts reflected in any of the Second Work Order Invoices within ten days of the invoice being sent.[25] But Xynomic has yet to pay any of the $8,622.50 reflected in the Second Work Order Invoices.[26]

### C. XYNOMIC'S FAILURE TO PAY THE FIRST AND SECOND WORK ORDER INVOICES

In April 2019, Xynomic acknowledged its then-outstanding balance and assured Parexel that it would make a payment by April 30, 2019, of at least $2.5 million.[27] Thereafter, Xynomic again acknowledged its then-outstanding balance, and this time, promised to pay its outstanding balance in full after a special meeting on May 13, 2019.[28] Despite these promises, Xynomic never made the payments.[29]

Pursuant to Section 5.2 of the MSA, on May 24, 2019, and again on May 31, 2019, Parexel notified Xynomic in writing that Xynomic had materially breached the MSA.[30] Under Section 5.2 of the MSA, Xynomic had thirty days to cure the

---

[24] Ans. ¶¶ 72–77, 80–81, 84–89.

[25] Ans. ¶¶ 14–52.

[26] Ans. ¶¶ 72–77, 80–81, 84–89.

[27] Am. Compl. ¶ 94; Plf.'s Mot., Ex. B.

[28] *Id.* ¶ 95.

[29] *Id.*; Ans. ¶¶ 94, 95.

[30] Plf.s' Mot., Exs. C, D; Am. Compl. ¶ 96; Ans. ¶ 96.

-7-

alleged material breach by paying the outstanding balance.[31]  Xynomic did not do so.[32]  Although Xynomic informed Parexel on August 5, 2019, that it "signed a $10 million financing in mid July" and that once the financing closed, it would "wire at least $1 million to [Parexel] right away," it still failed to make the payment.[33]

## II. PARTIES' CONTENTIONS

### A. PAREXEL'S BREACH-OF-CONTRACT CLAIMS

Count I of the Amended Complaint alleges that Xynomic is liable to Parexel for breach of Xynomic's contractual obligations under the MSA and the First Work Order.  Count II of the Amended Complaint alleges Xynomic is liable to Parexel for breach of Xynomic's contractual obligations under the MSA and the Second Work Order.

Parexel's contentions are simply:  Xynomic has breached the MSA and the Work Orders by not paying and all Xynomic's defenses fail.  Parexel asks that the Court enter Partial Summary Judgment for Parexel and against Xynomic on Counts I and II of the Complaint as they relate to the First and Second Work Order Invoices. Parexel contends that all the factual issues raised by Xynomic regarding the work quality and performance are immaterial because Xynomic never sent a written

---

[31]  Am. Compl. ¶ 96; MSA § 5.2.

[32]  *Id.* ¶ 96.

[33]  Plf.'s Mot., Ex. E.

objection pursuant to Section 4.2 for any of the now contested invoices within the contractually agreed upon period.

## B. XYNOMIC'S DEFENSE OF ITS WITHHELD PAYMENTS

Xynomic counters that there are factual issues in dispute preventing partial summary judgment for Parexel. While Xynomic does not dispute that it owes Parexel for services rendered, Xynomic argues that there are multiple issues in dispute regarding the quality and performance of the services on the First Work Order. Xynomic claims these deficiencies have a direct bearing on the amount of the invoices submitted by Parexel.

As to the First Work Order, Xynomic says it outlined nine countries Parexel was to cover in the clinical trial and that China is on that list.[34] According to Xynomic, Parexel never supported the arm in China, yet Xynomic was being charged for all nine covered countries.[35] Additionally, Xynomic says, Parexel's UK regulatory submission was rejected.[36] Still, Parexel allegedly created and submitted invoices based upon the inclusion of all nine countries in the clinical trial, and it developed a milestone-based budget with this assumption.[37]

---

[34] Ans. ¶ 108; Xu Dec. ¶ 4.

[35] Xu Dec. ¶ 4.

[36] *Id.* ¶ 5.

[37] *Id.* ¶ 6.

The First Work Order also provides that Parexel is responsible for all Data Management activities.[38] Xynomic claims it learned from several of its sites that the data management function and the Electronic Data Capture System for this trial was not being performed according to regulatory standard requirements.[39] Xynomic says it will not be able to use this pivotal trial data for any future regulatory approval if the data is not collected according to the regulatory requirements and industry standards.[40] Parexel also was to form an Independent Radiology Committee and was expected to review scans for the patients.[41] But Parexel failed to perform these activities, yet still continued to include these as expenses on its monthly invoices.[42] Additionally, Xynomic alleges that it cannot obtain primary endpoint data for its Phase 3 Clinical Trial as a result of this omission.[43] So none of the data obtained from those patients is suitable and able to be used for the Phase 3 Clinical Trial

---

[38] Def.'s Opp. at 4.

[39] Xu Dec. ¶ 7.

[40] *Id.* ¶ 9.

[41] *Id.*

[42] *Id.*

[43] *Id.*

submission because it does not meet minimum quality requirements and regulatory requirements.[44]

Xynomic discovered too that it was charged Pass-Through Expenses for Pazopanib that patients' insurance companies should have been covering according to state law.[45] As a result, Xynomic says that it is paying very high costs for items that never should have been included in the budgets or invoices as Pass-Through Expenses.[46]

Parexel was also tasked with developing and reviewing the model Informed Consent Form ("ICF") under the First Work Order.[47] The ICF is a basic requirement for Good Clinical Practice compliance to protect patient safety.[48] It functions to inform patients about all the information they need to know, and it's expected to be clear and accurate.[49] While reviewing one of the Institutional Review Boards ("IRB")-approved ICF, Xynomic says it found many errors and inconsistencies—

---

[44]  *Id.*

[45]  *Id.* ¶ 11.

[46]  *Id.*

[47]  *Id.* ¶ 12.

[48]  *Id.*

[49]  *Id.*

including inconsistencies with the protocol—that could cause confusion for patients.[50]

Lastly, under the MSA, Parexel was to form a Data Monitoring Committee ("DMC").[51] Xynomic alleges that Parexel has never formed this committee, yet has billed Xynomic for this activity.[52] Xynomic claims that the DMC should have been set up before any patient's enrollment in a Phase 3 Clinical Trial.[53]

In sum, according to Xynomic, Parexel never sought to change the Work Order as contemplated by Section 2.2 to reflect its failure to perform certain tasks or to perform them in compliance with regulatory standards. Instead, Xynomic claims, Parexel just continued to bill Xynomic for services never performed.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[54] "Summary judgment will not be granted under circumstances where the record reasonably indicates that a material fact is in dispute

---

[50] *Id.*

[51] Def.'s Opp. at 6 (citing Work Order 1 at 29–31).

[52] Xu Dec. ¶ 13.

[53] *Id.*

[54] Super. Ct. Civ. R. 56(c); *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).

or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[55] Unless the Court is reasonably certain that there is no triable issue, it is within the Court's discretion to decline to decide the merits of the case in a summary adjudication, and to remit the parties to trial.[56]

The standard for a motion for summary judgment is by "clear and convincing evidence," which is "an intermediate evidentiary standard, higher than mere preponderance, but lower than proof beyond a reasonable doubt."[57] Clear and convincing evidence requires the proof to be "highly probable, reasonably certain, and free from serious doubt."[58] The moving party must establish that the "undisputed facts support [its] claims or defenses," after which the burden "shifts to

---

[55] *Burris v. Penn Mart Supermarkets, Inc.*, 2006 WL 2329373, at *1 (Del. Super. Ct. July 13, 2006) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962)); *see also Cross v. Hair*, 258 A.2d 277, 279 (Del. 1969) ("Moreover, although the record is silent as to the Superior Court's reason for denying the defendant's motion for summary judgment, it needed no more reason than to conclude, upon preliminary examination of the facts, that it found it desirable to inquire thoroughly into all the facts in order to clarify the application of the law.") (citing *Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 919 (Del. 1965)); *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1227–28 (Del. Ch. 2000) ("[T]he Court also maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application.").

[56] *Cross*, 258 A.2d at 278.

[57] *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002) (citing *In re Tavel*, 661 A.2d 1061, 1070 n.5 (Del. 1995)) ("If the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate. If a rational trier of fact could find any material fact that would favor the non-moving party in a determinative way (i.e., that the clear and convincing standard could be met at trial), summary judgment is inappropriate.").

[58] *Id.*

the non-moving party to demonstrate that there are material issues of fact to be resolved" at trial.[59] And in determining whether there is, the Court must view the facts in the light most favorable to the non-moving party.[60] Where no such material facts exist, the moving party is entitled to judgment as a matter of law.[61]

## IV. DISCUSSION

The parties are in agreement that: (i) they entered into a valid and binding contract that requires Xynomic to pay Parexel for services rendered and expenses incurred under the two work orders; (ii) Parexel provided services and incurred expenses in connection with the work orders; (iii) Parexel submitted invoices for those services and expenses to Xynomic; (iv) Xynomic has not objected to or disputed many, if not most, of the amounts reflected in the invoices as required to withhold payment under the contract; and (v) Xynomic has not paid the vast majority of the amounts reflected in the invoices.

Xynomic has never addressed the Second Work Order at any point in its opposition to Paraxel's summary judgment request. So Xynomic is deemed to have

---

[59] *Petroleum v. Magellan Terminals Holdings, L.P.*, 2015 WL 3885947, at *3 (Del. Super. Ct. June 23, 2015).

[60] *Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979) (citing *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. Super. Ct. 1977)).

[61] *Id.*

-14-

implicitly waived any argument relating to the performance of these services.[62] And so, any alleged dispute of material fact concerns only the parties' obligations under the MSA and First Work Order.

In summary, Xynomic alleges it has discovered the following quality issues and failures to perform by Parexel:

- Failure to cover all nine countries in the trial as contemplated by [the First Work Order] yet continuing to bill Xynomic for based on the inclusion of all nine countries;

- Deficiencies with the data management and EDC systems resulting in data not being collected according to regulatory requirements;

- Failure to form an Independent Radiology Committee and to review patient scans;

- Failure to manage and maintain the imaging database;

- Charging Xynomic pass-through costs that should be borne by patients' insurance companies and not Xynomic;

- Deficiencies with the ICF;

- Failure to set up the DMC.[63]

Xynomic alleges that these issues with quality and non-performance constitute a breach of the MSA and the First Work Order, excusing Xynomic of its duty to abide by the dispute resolution procedure under MSA Sections 4.2 and 18.1 and further

---

[62] *See Nguyen v. Barrett*, 2016 WL 5404095, at *3 (Del. Ch. Sept. 28, 2016) ("Through his briefing, the Plaintiff implicitly waived the price and process claims, by failing to defend them with any argument or authority[.]").

[63] Def.'s Opp. at 11; *see generally* Xu Dec.

relieving Xynomic of its duty to pay the full amount of the invoices.[64]  Parexel contends that all of these performance issues are immaterial because Xynomic failed to object to the invoices within the contractually agreed upon period.

Parexel cites *Immedient Corp. v. Healthtrio, Inc.* in support of its argument.[65] The defendant in *Immedient* similarly argued that the plaintiff had breached a contract first by not properly performing under the parties' professional service agreement.[66]  The payment clause of the service agreement provided that "[n]on-disputed invoices shall be payable in full within 30 days from receipt . . . [and][a]ny and all attorney fees expended to collect unpaid undisputed amounts under this agreement shall be the responsibility of [the defendant]."[67]  The defendant had been invoiced for services rendered and never asserted that plaintiff failed to provide the services billed or that the defendant had not authorized the work by signing the invoice.  Rather, the defendant argued that the services rendered were inadequate to the point of relieving defendant of its duty to pay.  After holding a trial, this Court found that the dispute concerning solely the quality of the services rendered fell

---

[64]  *See* MSA §§ 4.2, 18.1.

[65]  2005 WL 1953027 (Del. Super. Ct. June 22, 2005), *aff'd*, 937 A.2d 139 (Del. 2007).

[66]  *Id.* at *8.

[67]  *Id.* at *4.

within the scope of the contract and thus the contractual remedies should govern.[68]

Accordingly, the defendant was found to have waived its right to refuse payment by

authorizing the work to be performed and then not contesting or disputing those

invoices within the required time period under the services agreement.[69] Where the

contract clearly limited the remedies and the defendant failed to avail itself of these

remedies, this Court found the only way for the defendant to prevail on its defense

was to show that the service agreement and the invoices it signed thereunder were

the product of fraud, overreaching or excusable neglect.[70] This Court found that the

defendant did not provide a credible reason to excuse its nonperformance and

granted judgment on this count in favor of the plaintiff.[71]

Unlike the defendant in *Immedient*, Xynomic alleges that Parexel billed for

services that were not performed at all. Thus, while Parexel is correct that the alleged

issues with only the quality of the services would qualify as "items in an invoice

which are disputed" under Section 4.2 of the MSA, the complete failure of Parexel

to perform a promised service would constitute excusable conduct. In fact, MSA

Section 4.2 provides that "[a]ll invoiced amounts for Services *performed* in

---

[68]  *Id.* at *8.

[69]  *Id.*

[70]  *Id.*

[71]  *Id.*

-17-

accordance with the terms and conditions of this Agreement and any Work Order are due net thirty (30) days from the receipt of PAREXEL's electronic invoice."[72] In accordance with the plain language of the MSA, if Parexel fully failed to perform the given service at all, as Xynomic so alleges, then the subsequent obligation on Xynomic to pay for it would not apply.

This is in line with this Court's recent decision denying the defendants' motion to dismiss the breach of implied covenant claim in *AssuredPartners of Virginia, LLC v. Sheehan*.[73] The dispute resolution provision of the asset purchase agreement in *AssuredPartners* provided that after the buyer calculates the earn-out amount and provides its calculation to the sellers, that calculation is conclusive for purposes of determining the earn-out payment and is "deemed accepted by the [sellers]," unless one of the sellers delivered a written objection to the buyer.[74] The sellers argued that since buyers had not objected, their calculation was conclusive.[75] To counter, the buyer argued this Court should not dismiss its breach of implied covenant claim because the calculation was based on false and inaccurate

---

[72] MSA § 4.2.

[73] *AssuredPartners of Virginia, LLC v. Sheehan*, 2020 WL 2789706 (Del. Super. Ct. May 29, 2020).

[74] *Id.* at *9 (citations omitted).

[75] *Id.*

information provided to it by the sellers.[76] This Court rejected the sellers' argument that the calculation was conclusive, finding there was an implied contractual term for the Sellers to "provide truthful and accurate information to [the buyer] to allow a fair and accurate calculation of the Earn Out Payment" and "ensure that the Earn Out Payment is fairly calculated based on the business's actual EBITDA."[77]

Same here. There was an implied obligation for Parexel to provide truthful and accurate information on the invoices it provided to Xynomic.[78] Parexel also had an explicit duty to generate and maintain a CIS Log "showing all changes to the scope of [clinical research service] and any associated changes to the budget" under Section 2.2(a).[79] Xynomic has thus adequately alleged an issue of material fact in claiming Parexel never sought to change the Work Order as contemplated by Section 2.2, and instead continued to bill Xynomic for services never performed.

To recover on a breach-of-contract claim, a plaintiff bears the burden to first demonstrate that it performed or was ready to perform its own contractual

---

[76]  *Id.*

[77]  *Id.* (citations omitted)

[78]  *See id.* ("This expectation to act reasonably and collaboratively is so 'fundamental to sophisticated parties entering into an agreement after arms-length negotiations that it need not be memorialized in the terms of the agreement itself.'") (quoting *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *13 (Del. Super. Ct. Aug. 7, 2019)).

[79]  MSA § 2.2.

obligations.[80] Parexel has not met its burden in showing that it performed or was ready to perform its obligations under the MSA and the First Work Order before Xynomic allegedly breached. The Court therefore finds it "desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[81] Given the lack of reasonable certainty that there is no triable issue, it is within the Court's discretion to decline to grant summary judgment.[82] Even Parexel's primary authority—the *Immedient* decision—was rendered after full trial, not on summary judgment.[83]

Given all that, it is entirely appropriate for the Court to remit the parties to trial on Count I. But, as to Count II, the Court finds that there is no dispute of material fact alleged, none is evident, and Parexel is entitled to summary judgment on that Count.

## V. CONCLUSION

For the foregoing reasons, Paraxel is hereby **DENIED** summary judgment as to Count I and **GRANTED** summary judgment as to Count II. Pursuant to Section 4.2 of the MSA, Xynomic must pay Parexel $8,622.50 on account of the Second

---

[80] *Gerstley v. Mayer*, 2015 WL 756981, at *5 (Del. Super. Ct. Feb. 11, 2015).

[81] *Burris*, 2006 WL 2329373, at *1 (citing *Ebersole*, 180 A.2d at 468–69).

[82] *Cross*, 258 A.2d at 278.

[83] *See generally Immedient*, 2005 WL 1953027.

Work Order Invoices, plus interest at the contract rate of 1% per month until Xynomic pays the Second Work Order Invoices in full.[84]

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary,
cc: All Counsel via File and Serve

---

[84] Ans. ¶ 12; MSA § 4.2.